# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DARREN MCKENNA**, | Case No. 3:17-cv-455-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WALTER CHRISTOPHER CRAWFORD AND CAROLYN JENNIFER CRAWFORD**, | |
| Defendants. | |

Scott Talmage Cliff, THE LAW OFFICE OF SCOTT T. CLIFF, 7307 SW Beveland Road, Suite 213, Portland, OR 97223. Of Attorneys for Plaintiff.

Walter Christopher Crawford and Carolyn Jennifer Crawford, Defendants, *pro se*.

**Michael H. Simon, District Judge.**

      Plaintiff Darren McKenna sues Defendants Walter Christopher Crawford and Carolynn Jennifer Crawford ("Defendants") to recover unpaid wages allegedly owed under the federal Fair Labor Standards Act, 29 U.S.C. § 206 ("FLSA"), as well as wages and other damages under Oregon Revised Statutes ("ORS") Chapters 652 and 653. Before the Court is Plaintiff's motion for partial summary judgment, seeking: (1) damages for unpaid wages allegedly owed by

Defendants; and (2) dismissal of Defendants' counterclaims for defamation and slander. A jury trial is currently scheduled to begin on September 24, 2018.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Defendants own and operate 5C Quick Mart (the "Store") in Northeast Portland, Oregon. The parties appear to agree that Plaintiff worked or at least "helped out" in the Store between September 2, 2015 and October 13, 2016. *See* ECF 33 ¶¶ 1-2 (McKenna Decl.). The parties dispute, however, whether Plaintiff was ever Defendants' "employee" and, even if so, how many hours and on what days Plaintiff worked. Defendants state that other than the first week and a half after Defendants opened the Store, Plaintiff worked or helped out at the Store, on average, only about 35 hours per week and never on weekends. ECF 32 at 3-4 (Defendants' Response to

PAGE 2 – OPINION AND ORDER

Interrogatories). Plaintiff asserts that he worked many more hours at the Store. ECF 33 ¶¶ 1-2. Plaintiff adds that he was not ever paid for his work during a 13-month period. *Id*. ¶ 3. On November 4, 2016, Plaintiff, through his counsel, made a written demand for payment of all back wages allegedly owed, which Defendants have refused to pay.

In their response to summary judgment, Defendants state that Plaintiff lived with Defendants and that they supported Plaintiff financially and treated him as a member of their family for many years. ECF 34 at 1-2 (Defendants' Response).[1] According to Defendants, when Defendants opened the Store, Plaintiff "helped out" by working there in return for Defendants' having taken care of him for so long. According to Defendants, Plaintiff helped out in the Store because he "had nothing else to do" and because Plaintiff knew that it was time for him to help "support the household." ECF 34 at 1-2.[2] While Plaintiff worked in the Store, Defendants

---

[1] Although Defendants' response in opposition to summary judgment is unsworn, and Defendants do not submit a declaration attesting to the veracity of their statements, "[a]t the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form. [The court] instead focus[es] on the admissibility of its content." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment . . . "). "[A]t summary judgment a district court may consider . . . evidence submitted in an inadmissible form, so long as the underlying evidence *could be provided in an admissible form* at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (emphasis added); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("[T]he evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial[.]"); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) (reaffirming *Fraser v. Goodale*, and noting that "Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial"); *cf.* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact *cannot be presented* in a form that *would be admissible* in evidence" (emphasis added)).

[2] Defendants also assert that Plaintiff helped out in the Store to pay off a substantial debt owed to Defendants. It is not clear whether this "debt" refers only to the fact that Plaintiff was living with and being taken care of by Defendants, or whether Plaintiff owed some additional sum over and above the value of assistance.

explain, Plaintiff continued to live in their home, and Defendants continued to pay Plaintiff's daily living expenses, including food, utilities, clothing, and cigarettes. According to Defendants, they never discussed with Plaintiff paying him any salary or hourly wage, but add that they gave Plaintiff money during the time that Plaintiff was working in the Store. ECF 32 at 3.

**DISCUSSION**

Plaintiff moves for partial summary judgment, arguing that it is undisputed that Plaintiff worked at least 35 hours per week between September 2015 and October 2016 and that he is, therefore, owed back wages for at least that amount of time. Plaintiff argues that he is entitled to summary judgment awarding him minimum wage compensation for these hours, FLSA liquidated damages, penalty wages, and prejudgment interest. In response, Defendants, proceeding *pro se*, argue that Plaintiff was never their employee, that they gave Plaintiff room, board, clothing, and money, and that a jury should decide whether Defendants owe Plaintiff anything further. Defendants also assert counterclaims, seeking damages for alleged defamation, slander, emotional distress, and financial hardship.

**A. Plaintiff's Claims**

    **1. Whether Plaintiff Was an "Employee"**

Plaintiff is only entitled to recover on his FLSA or state law employment claims if he was an "employee" of Defendants. The FLSA provides the following definitions: (1) "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."; (2) "Except as provided in paragraphs (2), (3), and (4) [which do not apply in this case], the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203. "Employ," in turn, "includes to suffer or permit to work." 29 U.S.C. § 203(g). Plaintiff summarily asserts that he was "clearly" an "employee" for purposes of both the FLSA and

Oregon law because he was not a partner in the operation of the Store. The question of whether Plaintiff was an "employee" under the FLSA, however, is not so simple.

"The test of employment under the [FLSA] is one of 'economic reality.'" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (citing *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961)). This depends "upon the circumstances of the whole activity," rather than on "isolated factors." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). An employee, for purposes of the FLSA's minimum wage requirements, is someone who has "an express or implied agreement for compensation" with the purported employer. *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).

Two Supreme Court cases are particularly relevant to the analysis of whether someone is an "employee" under the FLSA. In *Walling v. Portland Terminal Co.*, the Supreme Court held that participants in a week-long training course that was a prerequisite for employment with a railroad company were not employees. The Court explained that, although the FLSA has a broad scope, "[t]he definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without an express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling*, 330 U.S. at 152. Second, the FLSA does not render one "whose work serves only his own interest an employee of another person who gives him aid and instruction." *Id*. Because the railroad "receive[d] no immediate advantage" from the trainees' work, the trainees were not employees. *Id*. at 153.

In *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), the Supreme Court held that a district court had not erred in concluding that "associates" of a foundation were employees. The foundation, a nonprofit religious organization, ran several

businesses. Its associates, who were in recovery for drug addiction or who had previously committed crimes, staffed these businesses. The associates did not receive any salary, but received in-kind compensation in the form of food, clothing, and shelter. Associates were "fined" for poor performance on the job, worked on commission, and were denied food if they were absent from work for any reason. The Court distinguished *Walling*, explaining that, whereas in *Walling* the training course lasted only several days, the associates in *Alamo* "were entirely dependent upon the Foundation for long periods, in some cases several years." *Alamo*, 471 U.S. at 301. The Court concluded that "the district court's finding that the associates must have expected to receive in-kind benefits—and expected them in exchange for their services—is certainly not clearly erroneous." *Id*. "[T]he fact that the compensation was received primarily in the form of benefits rather than cash is in this context immaterial. These benefits are . . . wages in another form." *Id*.[3] "The Court looked to the economic reality of the situation and held it involved work for compensation and hence employment." *Benjamin v. B&H Educ., Inc.*, 877 F.3d 1139, 1144 (9th Cir. 2017) (discussing *Alamo*).

After reviewing *Walling* and *Alamo*, the Ninth Circuit concluded in *Williams* that Williams, who lived and worked at a Salvation Army, was not an employee of the Salvation Army because he had no express or implied agreement for compensation. There was no express agreement, the court explained, because Williams had actually signed a written agreement stating that he was a *beneficiary* of the organization, and not an employee. The court also found that there was no implied agreement, because Williams went to the Salvation Army for help as a recovering alcoholic, and the work that Williams did for the organization was "solely" for the

---

[3] As the Court noted, the FLSA "defines 'wage' as including board, food, lodging, and similar benefits customarily furnished by the employer to the employees." *Alamo*, 471 U.S. at 301; *see* 29 U.S.C. § 203(m)(1).

purpose of his own rehabilitation. *Williams*, 87 F.3d at 1067. The court also concluded that it would be improper to find that Williams was compensated in-kind; rather, Williams agreed to, and did, turn over general assistance and food stamps for which he was eligible to the Salvation Army to offset the cost of his room and board. Thus, the court found, the in-kind benefits he received "were given to Williams to enable him to pursue his rehabilitation," not as compensation. *Id*. at 1067. The Ninth Circuit distinguished *Alamo* on the grounds that *Alamo* involved "both a rehabilitative element *and* an implied agreement for compensation." *Id*. at 1068 (emphasis added).

The Ninth Circuit recently stated that following *Alamo* and *Walling*, it has applied "a four-part economic reality test looking to the totality of the circumstances." *Benjamin*, 877 F.3d at 1145. At least in cases "involving prison inmates and homeless persons in rehabilitation programs," the Ninth Circuit has considered the following factors: "whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Id*. (quoting *Hale v. Arizona*, 993 F.2d 1387, 1389 (9th Cir. 1993)). In the context of student workers or interns, the Ninth Circuit applies a seven-factor "primary beneficiary test," followed by other Courts of Appeal, which examines the extent to which an internship benefits the intern, rather than the alleged employer. *Id*. at 1146.

In this case, Plaintiff would be only an "employee" for FLSA purposes if there was bargained-for compensation—*i.e.*, an express or implied agreement for compensation. Neither party points to any evidence of an express agreement for compensation. Plaintiff also does not explicitly state that there was any agreement for compensation. Instead, Plaintiff asserts that he was never paid for his work at any time during the 13 months he worked in the Store, while

Defendants assert that they did pay Plaintiff. These facts cut both ways. As against Plaintiff, his assertion that he was not paid anything at any time for his work at the Store during a 13-month period, at least when viewed in the light most favorable to the non-moving party, provides some evidence that there was neither an express or implied agreement that Plaintiff would be compensated, thus making Plaintiff not an "employee."

Defendants state, and Plaintiff does not dispute (except to argue that Defendants have not presented admissible evidence on the matter), that Defendants provided Plaintiff with a place to live, food, clothing, cigarettes, and also gave him a sum of money each week when he worked in the Store. Defendants, however, also state that even before Plaintiff started "helping out" in the Store, Defendants treated Plaintiff as a member of the "family," including by providing Plaintiff with food, clothing, lodging, and money for expenses. As *Williams* shows, the mere fact that Plaintiff worked in the Store and that Defendants also gave Plaintiff food, clothing, and shelter, does not necessarily mean that there was an implied compensation agreement. This is particularly the case here, because there is some evidence in the record to suggest that Plaintiff lived with and was supported by Defendants, even before he began working in the Store.

Although Defendants explain that they gave Plaintiff a sum of money during the weeks that he worked in the Store, Plaintiff claims that he was *never* monetarily compensated for his work in the Store. It also is not clear whether Defendants gave Plaintiff money even before Plaintiff began working in the Store. In light of this conflicting and unresolved evidence, the Court concludes that material questions of fact remain with respect to whether Plaintiff was an "employee" of Defendants for purposes of the FLSA.

Plaintiff also states that he was an employee under Oregon law. Oregon courts have recognized that the Oregon "legislature adopted the FLSA's definition of 'employ' for the

purpose of the state minimum wage laws." *Dinicola v. State*, 246 Or. App. 526, 544 (2011) (noting that a different, common-law based "right of control test" applies in distinguishing between employees and independent contractors but suggesting that outside of that context, the FLSA test applies to the definition of "employ"). In doing so, "the legislature adopted an established term of art from federal law." *Cejas Commercial Interiors, Inc. v. Torres-Lizama*, 260 Or. App. 87 (2013) (concluding that the "economic realities test" is the proper test to apply to determine whether an employment relationship exists). Thus, the FLSA test applies to Plaintiff's state law claims as well, and the same material questions of fact remain as to whether Plaintiff was an employee under state law.

### 2. Whether Plaintiff Is Owed Any Compensation or Additional Compensation

Summary judgment is improper for an additional reason: even assuming Plaintiff *was* an employee for FLSA or state law purposes, the question of whether Plaintiff was already compensated and, if so, the amount of any remaining compensation that may be owed remains in dispute. Although Plaintiff asserts that he was not paid for any of the work he did, Defendants state that Plaintiff they gave Plaintiff money during the time he was working in the Store. Although, for the reasons discussed above, it is not clear whether such money was part of a bargained-for compensation, expressly or impliedly, even if it was, summary judgment would be improper because there is a genuine dispute over whether Plaintiff was paid for his work and, if so, how much.

Further, Plaintiff does not dispute Defendants' account that Plaintiff lived with Defendants as a member of their household while he worked in the Store, or that Defendants paid Plaintiff's living expenses during that time. Such in-kind benefits are "wages in another form." *Alamo*, 471 U.S. at 301. Under the FLSA, "'[w]age paid to any employee" is defined to "include[] the reasonable cost . . . to the employer of furnishing such employee with board,

PAGE 9 – OPINION AND ORDER

lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m)(1). Lacking any evidence regarding whether Defendants had any other purported employees, it is unclear whether this provision applies. If it does, then Defendants may be able to apply, as a credit against any wages owed, the reasonable costs expended in providing Plaintiff with room and board.[4] *See* 29 C.F.R. § 531.27 ("Section 3(m) [of the FLSA] provides . . . for the inclusion in the 'wage' paid to any employee, under the conditions which it prescribes of the 'reasonable cost,' or 'fair value' as determined by the Secretary, of furnishing such employee with board, lodging, or other facilities."); *id.* ("Thus, in determining whether he has met the minimum wage and overtime requirements of the Act, the employer may credit himself with the reasonable cost to himself of board, lodging, or other facilities customarily furnished by him to his employees . . .").[5]

Thus, even if it were undisputed that Plaintiff was an employee and that he was not paid any *money* for his work in the Store, summary judgment awarding damages for a minimum wage not paid for 35 hours per week would be improper because it would potentially fail to account for any in-kind compensation already paid. In light of all of these disputed material facts, the Court concludes that Plaintiff's request for summary judgment on the wages and damages allegedly owed for working an average of 35 hours per week without pay is inappropriate.

**B. Defendants' Counterclaims**

In their Amended Answer, Defendants conclude with a "prayer for relief" in the amount of $300,000 for slander, defamation of character, emotional distress, and financial hardship.

---

[4] As FLSA regulations note, 29 U.S.C. § 203(m) "gives the Secretary [of Labor] authority to determine the 'fair value'" of such benefits. 29 C.F.R. § 531.2.

[5] There are "certain limitations and safeguards" on "the payment of wages in other than cash or its equivalent," in addition to special recordkeeping requirements. 29 C.F.R. § 531.28. Whether these were met is an additional issue that cannot be resolved on this record.

ECF 15. Defendants appear to be asserting counterclaims for defamation and slander, but do not plead the factual basis for this claim.[6] Defendants' response to Plaintiff's motion for summary judgment and Defendants' responses to interrogatories, which Plaintiff submitted to the Court reveal that Defendants appear to base their defamation and slander claims on statements that Plaintiff allegedly made about this dispute to his lawyer and to the Court. *See* ECF 32 at 4. Specifically, Defendants appear to rely on the demand letter from counsel sent to Defendants in November 2016. In response to summary judgment, Defendants also assert that everything that Plaintiff has stated to the Court in Plaintiff's court filings is defamatory.

The Oregon Supreme Court "has recognized the absolute privilege accorded communications made by attorneys in judicial proceedings." *Troutman v. Erlandson*, 286 Or. 3, 6 (1979) (citing *McKinney v. Cooper*, 163 Or. 512 (1940)). The court has "[l]ikewise . . . recognized the absolute privilege of communications made by parties in judicial proceedings." *Id*. (citing *Binder v. Oregon Bank*, 284 Or. 89 (1978); *Strycker v. Levell and Peterson*, 183 Or. 59, 67 (1948); *Moore v. Sater*, 215 Or. 417, 420 (1959); and *Ramstead v. Morgan*, 219 Or. 383, 388 (1959). "The absolute privilege accorded attorneys and litigants for communications made in connection with judicial proceedings generally concern [sic] statements made in the proceeding itself," but also applies to persons and communications that have "direct connection with the [relevant] judicial proceeding." *Id*. In other words, "[t]he absolute immunity

---

[6] To state a claim for defamation under Oregon law, a complaint "must state facts sufficient to establish that the defendant published to a third person a defamatory statement about plaintiff." *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 94 (2001). "A defamatory statement is one that would subject another to "'hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other].'" *Id.* (alterations in original) (quoting *Reesman v. Highfill*, 327 Or. 597, 603 (1998)).

PAGE 11 – OPINION AND ORDER

attaches to statements made in the course of, or incident to a judicial proceeding." *Ramstead*, 219 Or. at 388.

In deciding whether to apply the privilege in a given case, the Oregon Supreme Court has consistently looked to the privilege's rationale:

> Based upon the ground that there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: We will treat as absolutely privileged any statement made in the performance of these duties.

*Binder*, 284 Or. at 91 (quoting *Ramstead*, 219 Or. at 387). "The only limitation imposed, which is a limitation consistent with the rationale behind the rule, is that the statement must be pertinent or relevant to the interest we have found to be so important." *Id.* at 93.

The Oregon Supreme Court has previously extended the privilege to "a letter sent [by an attorney] in the settlement process" of a case. *Troutman*. 286 Or. at 8 (citing *Chard v. Galton*, 277 Or. 109 (1977)). Citing a New York state opinion explaining that "[i]t is not absolutely essential, in order to obtain the benefits of absolute privilege, that the language claimed to be defamatory be spoken in open court or contained in a pleading, brief, or affidavit," the Oregon Supreme Court in *Chard* found that because a statement made in a settlement letter "was sufficiently related to the subject of the litigation," it was absolutely privileged. *Chard*, 277 Or. at 114. In *Ramstead*, the Oregon Supreme Court noted that "[t]he fact that [a] complaint made by [a] defendant to the grievance committee did not eventuate in a formal hearing . . . does not preclude the application of the rule of absolute privilege." 219 Or. at 394. The court cited the definition of the privilege in the Restatement of Torts:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false

PAGE 12 – OPINION AND ORDER

> and defamatory matter of another in communications preliminary
> to a proposed judicial proceeding, or in the institution of or during
> the course and as a part of a judicial proceeding in which he
> participates, if the matter has some relation thereto.

*Id.* (quoting 3 Restatement, Torts, § 587). As such, "[a]n absolute privilege has been granted in a variety of circumstances where defamatory statements have been made in connection with the institution of proceedings," including where no function of the court or its officers is invoked." *Id.* at 394-96 (collecting cases).

In the pending case, any statements or representations Plaintiff has made to the Court in the conduct of this litigation are absolutely privileged from a defamation or slander claim. Similarly, the demand letter on which Defendants appear to rely is absolutely privileged because it closely, directly relates to this litigation. The Court also notes that Plaintiff himself did not send the letter, and Defendants seek to recover from Plaintiff, not his attorney. Thus, Defendants rely on the letter not necessarily as a defamatory publication itself, but rather as indirect evidence of a defamatory publication—the inference being that if Cliff wrote certain things in a letter on behalf of his client, it must be because his client, Plaintiff, told the attorney those things. This does not, however, change the fact that the letter itself is privileged and that Defendants have neither pointed to nor presented any other evidence of a defamatory publication that would not be privileged. Thus, although Defendants have not clearly pleaded the factual basis for their defamation or slander counterclaims, the Court concludes that to the extent Defendants' counterclaims are based on statements made by Plaintiff to his attorney or to the Court about this matter, summary judgment dismissing these counterclaims is warranted.

## CONCLUSION

Plaintiff's motion for partial summary judgment (ECF 31) is GRANTED in part and DENIED in part. Plaintiff's motion is denied with respect to Plaintiff's claims. Whether Plaintiff

> and defamatory matter of another in communications preliminary
> to a proposed judicial proceeding, or in the institution of or during
> the course and as a part of a judicial proceeding in which he
> participates, if the matter has some relation thereto.

*Id.* (quoting 3 Restatement, Torts, § 587). As such, "[a]n absolute privilege has been granted in a variety of circumstances where defamatory statements have been made in connection with the institution of proceedings," including where no function of the court or its officers is invoked." *Id.* at 394-96 (collecting cases).

In the pending case, any statements or representations Plaintiff has made to the Court in the conduct of this litigation are absolutely privileged from a defamation or slander claim. Similarly, the demand letter on which Defendants appear to rely is absolutely privileged because it closely, directly relates to this litigation. The Court also notes that Plaintiff himself did not send the letter, and Defendants seek to recover from Plaintiff, not his attorney. Thus, Defendants rely on the letter not necessarily as a defamatory publication itself, but rather as indirect evidence of a defamatory publication—the inference being that if Cliff wrote certain things in a letter on behalf of his client, it must be because his client, Plaintiff, told the attorney those things. This does not, however, change the fact that the letter itself is privileged and that Defendants have neither pointed to nor presented any other evidence of a defamatory publication that would not be privileged. Thus, although Defendants have not clearly pleaded the factual basis for their defamation or slander counterclaims, the Court concludes that to the extent Defendants' counterclaims are based on statements made by Plaintiff to his attorney or to the Court about this matter, summary judgment dismissing these counterclaims is warranted.

## CONCLUSION

Plaintiff's motion for partial summary judgment (ECF 31) is GRANTED in part and DENIED in part. Plaintiff's motion is denied with respect to Plaintiff's claims. Whether Plaintiff

was Defendants' employee and, if so, the amount of any unpaid wages owed are questions that require determination by a jury. Plaintiff's motion is granted, however, with respect to Defendants' counterclaims for defamation and slander, at least to the extent that these counterclaims are based on representations that Plaintiff allegedly made either to the Court or his attorney about the subject matter of this action.

**IT IS SO ORDERED**.

DATED this 3rd day of August, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge